AUG 14 2007

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AGHA RAZA ALI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:07cv470 (JCC) |
| | ) |
| MICHAEL CHERTOFF, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter comes before the Court on Defendants' motion to dismiss, or alternatively to remand to the United States Citizenship and Immigration Service. For the following reasons, the Court will deny Defendants' motion to dismiss, but grant the alternative motion to remand.

### I. Background

Agha Raza Ali ("Plaintiff") is a citizen of Pakistan and a lawful permanent resident of the United States. Plaintiff properly filed an application for naturalization with the United States Citizenship and Immigration Service ("CIS") on October 21, 2005. After submitting fingerprints and providing additional requested documentation, an initial interview was conducted by a CIS official on March 23, 2006. After that time, Plaintiff was informed that the Federal Bureau of Investigations ("FBI") was in the process of conducting a background check, and a final decision could not be made until the check was completed.

After 540 days elapsed, Plaintiff filed a complaint with this Court, alleging that the CIS has failed to adjudicate his application for naturalization within 120 days after his examination, as required by 8 U.S.C. § 1446. Plaintiff contends that the March 23, 2006 interview triggered the 120-day statutory period which must expire before this Court may exercise subject matter jurisdiction. Plaintiff asks this Court to exercise jurisdiction and adjudicate the application or compel immediate adjudication by CIS. On July 9, 2007, Defendants filed a motion to dismiss, arguing that this Court lacks subject matter jurisdiction over the application. In the alternative, Defendants ask the Court to remand the application to CIS. This motion is currently before the Court.

## II. Standard of Review

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Where subject matter jurisdiction is challenged, the factual allegations are assumed true. *See Virginia v. United States*, 926 F. Supp. 537, 540 (E.D. Va. 1995). If, however, "the motion challenges the actual existence of the Court's subject matter jurisdiction, . . . the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Id.* (citing *Capitol Leasing Co. v.*

*FDIC*, 999 F.2d 188, 191 (7th Cir. 1993); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982); *Ocean Breeze Festival Park, Inc. v. Reich*, 853 F. Supp. 906, 911 (E.D. Va. 1994)). The burden of proving subject matter jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *De Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### III. Analysis

A) <u>Subject Matter Jurisdiction</u>

The Court will first address the issue of subject matter jurisdiction, by analyzing the controlling jurisdictional statute, 8 U.S.C. § 1447(b). That statute provides a district court with jurisdiction to either compel agency action on a naturalization application, or to adjudicate an application when "there is a failure to make a determination under § 1446 of [Title 8] before the end of the 120-day period after the date on which the examination is conducted." 8 U.S.C. § 1447(b). At issue in this case is the statutory meaning of the examination

date. Plaintiff argues that the examination date is the date on which the interview with a CIS officer occurred, triggering the 120-day statutory period in this case on May 23, 2006. However, Defendants argue that the "examination" is an ongoing process, including both the CIS interview and the FBI background check, and is not completed until all phases of the investigation are complete. By Defendant's argument, the 120-day statutory period will not begin to run until the FBI Background check has been completed.

Courts are split on this issue, and several differing interpretations of the statute have emerged, even amongst courts in this district. *Compare Danilov v. Aguirre*, 370 F. Supp. 2d 441 (E.D. Va. 2005)(J. Ellis) *w. Manzoor v. Chertoff*, 472 F. Supp. 2d 801, 809 (E.D. Va. 2007)(J. Smith); *Chen v. Gonzales*, Civil No. 07-239 (E.D. Va. Jun. 27, 2007)(J. Lee). In *Danilov*, this Court held that "examination" refers to the entire naturalization process rather than a single event that triggers the 120-day period. Under this construction, the 120-day statutory period begins after this entire process is complete, not at the completion of a single event such as the interview.

A similar result, stemming from a different analysis, has been offered by the Fifth Circuit--the only United States Court of Appeals to directly address this issue. In *Walji v. Gonzales*, 489 F.3d 738 (5th Cir. 2007), that court held that

while the plain meaning of § 1447(b) contemplates a single triggering event, Congress "clearly intended the FBI's security investigation to occur before that examination takes place." *Id.* at 741. That court further reasoned that taking the statutory language at its plain meaning would undermine 8 C.F.R. § 335.2(b), which mandates that examination occur "only after the Service has received a definitive response from the [FBI] that a full criminal background check ... has been completed." *Id.* Thus, the Fifth Circuit concluded that

> when initial examination by immigration officer of alien applying for naturalization is conducted prematurely, before the Federal Bureau of Investigation (FBI) has completed its background investigation, 120-day period for CIS to rule upon alien's application for naturalization begins to run, not from date of this premature initial examination, but from when CIS receives definitive response from the FBI.

*Id.* The result in the instant action would be the same under either the *Danilov* or *Walji* line of cases. In either instance, the 120-day statutory period would not begin until the FBI background check is completed, and this Court would lack subject matter jurisdiction.

Nonetheless, the majority of courts have disagreed with both *Danilov* and the ultimate holding in *Walji,* holding that the statutory language contemplates a single triggering event, and the 120-day period begins to run from the date of the "appearance in person before a Service officer." *See, e.g., Khelifa v.*

-5-

*Chertoff,* 433 F. Supp. 2d 836 (E.D. Mich. 2006); *Hussein v. Gonzales,* 474 F. Supp. 2d 1265 (M.D. Fla. 2007); *Manzoor v. Chertoff,* 472 F. Supp. 2d 801 (E.D. Va. 2007)(J. Smith). Under this construction, the 120-day period is triggered by the initial interview of the applicant.

This Court finds the majority view the most compelling. First, the Court agrees with both the majority and the Fifth Circuit that the statutory language clearly contemplates a single triggering event rather than an ongoing process. Section 1447(b) directs courts to examine the language of § 1446 to properly define the term "examination," and under § 1446, there is a clear distinction between the "investigation" and the "examination;" the two are not treated as part of one ongoing process. *See Manzoor,* 472 F. Supp. 2d at 806. Moreover, § 1447(b) itself clearly contemplates a single date upon which "the examination is conducted." 8 U.S.C. § 1446. Given that a lengthy background check cannot be "conducted" on a single date, this language also supports a reading of the statute by which the initial interview, rather than the background check, triggers the 120-day process. Additionally, this Court agrees with the *Manzoor* court that a reading of 8 C.F.R. §§ 332-335 further supports the conclusion that the interview, not the background completion, triggers the

120-day period.[1] This decision is supported by the Fourth Circuit's recent holding that a petition was proper and vested a district court with jurisdiction when filed 120 days after the initial examination. *See Etape v. Chertoff*, --- F.3d ---, 2007 WL 2200286 (4th Cir. Aug. 2, 2007). Accordingly, this Court finds that the 120-day period is triggered by the initial interview and not the completion of the naturalization process.

Guided by the recent district court decision in *Omeiri v. District Director, Bureau of Citizenship and Immigration Services*, 2007 WL 2121998 (E.D. Mich. July 27, 2007), this Court also declines to follow the reasoning of the Fifth Circuit in *Walji*. Like the *Omeiri* court, this Court disagrees with *Walji's* assertion that a background check is required to precede the initial examination. The background check requirement states only that Immigration and Naturalization Service ("INS") funds shall not be used to complete adjudication of a naturalization application unless the INS has received confirmation that an FBI criminal background check has been completed. Department of Justice Appropriations Act of 1998 (the Act), Pub. L. No. 105-

---

[1] *See Manzoor*, 472 F. Supp. 2d at 807 (discussing the various provisions of the applicable regulations that indicate a single triggering event, such as language that "[s]ubsequent to the filing of an application for naturalization, each applicant shall *appear* in *person* before a[CIS] officer ... [and] the applicant may request *the presence* of an attorney or representative who has filed an appearance." (quoting 8 C.F.R. § 335.2(a)); or that "[a] decision to grant or deny the application shall be made at the time of the initial examination or within 120 days after *the date* of the initial examination of the applicant for naturalization under § 335.2." (quoting 8 C.F.R. § 335.3 (emphasis added)).

119, Title I, Nov. 26, 1997, 111 Stat. 2448 *reprinted in* historical and statutory notes to 8 U.S.C.A. § 1446(a).

This Court agrees with the *Omeiri* court that while this language conveys Congressional intent to prevent a final decision on a naturalization application prior to background check confirmation, it does not preclude conducting an initial examination before the background check has been completed. Put differently, it does not mandate a specific order of the processes involved in adjudicating naturalization application. Rather, it merely requires that a background check be completed before a final decision is made on the application.

This Court is also unpersuaded by *Walji's* conclusion that the 120-day time period of 8 U.S.C. § 1447(b) does not begin to run until the background check is completed in cases where the examination of an applicant occurs before the background check is complete. The language of the statute simply does not provide for this mechanism, but instead clearly provides for a 120-day period stemming from the date of examination. As noted in *Omeiri*, the purpose of granting jurisdiction to the district courts 120 days after the initial interview with an applicant for naturalization is to ensure that Defendant does not unreasonably delay its decision. *Omeiri*, 2007 WL 2121998 at *2. As that court held, "once Defendant conducts its initial interview with the applicant, it has 120 days in which to complete any

investigation it deems necessary in order to make a final decision. Tellingly, Congress did not qualify the grant of jurisdiction other than delaying it by 120 days: if, for any reason, including the absence of a complete criminal background check, Defendant has not made a decision at the end of 120 days, the district courts can assume jurisdiction." *Id.* at *2. The Court agrees with this interpretation, and finds that this reading of the statute gives the district courts authority to oversee the application process, including gathering information necessary to make a final decision, which assures that the Defendants take the necessary steps for the final adjudication of the application and are subjected to the court's power over contempt.

A court's exercise of jurisdiction and subsequent oversight over an application after the 120-day period is not incompatible with the requirement that a background check be completed before final adjudication. Thus, the Court also disagrees with the assertion made in *Walji* that a plain reading of the statute would render 8 C.F.R. § 335.2(b) superfluous. 489 F.3d at 741. Completion of a background check is clearly required prior to final adjudication, and the exercise of jurisdiction to conduct oversight or ultimate adjudicative power does not disturb this requirement. The 120-day jurisdictional provision certainly does not mandate that Defendant make a final

decision in cases where it does not possess the necessary information, such as when background checks are incomplete; it merely provides necessary oversight to a complicated process without hastening it or requiring CIS to imprudently rush applications. Rather, the exercise of jurisdiction after the 120-day period provides an incentive for CIS to process its applications efficiently, while lack of jurisdiction until 120 days after the entire process is complete runs the risk of promoting delay without oversight. Accordingly, through the power to remand the application and instruct CIS, the courts have the authority to defer the decision-making authority, while still maintaining supervision over the timeliness of the application process.

This Court believes that the interpretation provided in *Walji* would strip the courts of this oversight responsibility. As the *Omeiri* court held, "if 'the examination' were truly a process that could not be 'conducted' until Defendant had obtained all information that, in its sole discretion, it deemed necessary to make a final decision, it could delay the tolling of the 120-day jurisdictional period indefinitely by simply asserting its authority to gather further information, request supplemental background checks, or conduct re-examinations." 2007 WL 2121998 at *2. This Court agrees, and finds that Congress did not intend to allow Defendant to sidestep judicial

oversight in the manner permitted by *Walji*.

    B)   <u>Remedy</u>

Having determined the threshold issue of subject matter jurisdiction, the Court must next determine the appropriate application of § 1447 to the facts of this case. As noted above, the 120-day period after the examination has passed, but Plaintiff concedes that his background check is not yet complete. Section 1447(b) allows this Court to "either determine the matter or remand the matter, with appropriate instructions, to CIS to determine the matter." 8 U.S.C. § 1447(b). For the reasons stated below, the Court will remand the matter to CIS.

First, this Court agrees with the *Manzoor* court that the administration of background checks is better left to CIS, who may need to interpret results and conduct follow-up examinations. *Manzoor*, 472 F. Supp. 2d at 808-09. This Court simply lacks the expertise and equipment that CIS has in its possession to process background checks expeditiously and prudently. Second, this Court does not wish to discourage CIS from conducting interviews prior to the completion of FBI background checks. Pre-background check interviews are permissible because, while the 120-day period confers this Court with jurisdiction to oversee the application process or necessarily adjudicate applications, it does not mandate a CIS decision within 120 days of the interview. Finally, the Fourth

Circuit's recent holding that a proper § 1447(b) petition vests a court with *exclusive* jurisdiction over an application, preventing CIS action on the matter unless it is remanded further guides against retention of jurisdiction. *See Etape,* 2007 WL 2200286 at *2-3.

In light of the *Etape* decision, and because CIS is precluded by 8 U.S.C. § 1446 from granting applications until the background checks are completed, this Court believes that the appropriate remedy is to remand the matter back to CIS and direct that agency to make a decision on the application within a reasonable time after the background check has been completed. The Court will not specify a time frame for adjudication, as it firmly believes that course of action would encourage others to use the judicial system to, as the *Manzoor* court put it, "jump to the front of the line." 472 F. Supp. 2d at 809. Thus, premature adjudication or remand with a specific time frame would promote unsound public policy and interfere with fair and thorough processing of applications and background checks. Furthermore, the Court does not wish to encourage the filing of additional civil actions in an effort to expedite the naturalization process in every instance where background checks are delayed beyond a 120-day period. Accordingly, the Court will remand the matter back to CIS, with instruction to adjudicate the application within a reasonable time after the background check is complete.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be denied, and Defendant's alternative motion to remand will be granted. The Court will remand this matter back to CIS with the instruction to adjudicate the application within a reasonable time after completion of the FBI background check. An appropriate Order will issue.

August 14, 2007
Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge